# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **EVEREST REAL ESTATE** | § | |
| **INVESTMENTS LLP**[1] | § | **Case No. 20-34077 (CRL)** |
| Debtor. | § | **(Subchapter V Chapter 11)** |
| | § | |

## DECLARATION OF DR. THOMAS T. VO, MD IN SUPPORT OF CONFIRMATION OF DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Pursuant to 28 U.S.C. § 1746, I, Dr. Thomas T. Vo, MD declare under penalty as follows:

1.     "I am the manager of Everest Real Estate LLP (**"Debtor"** or **"Everest"**) which maintains a corporate office at 6030 South Rice, Suite C, Houston, TX 77081. I am duly authorized to execute this declaration on behalf of the Debtor, in support of confirmation of Chapter 11 plan. I have served in this capacity since May of 2019. I am familiar with the Debtor's business, day-to-day operations, and financial affairs.

2.     I submit this Declaration to assist the United States Bankruptcy Court for the Southern District of Texas (the **"Bankruptcy Court"**) and other parties in interest in in support of the Debtor's Third Amended Plan of Reorganization (**"Plan"**) filed at Docket No. 247. I have reviewed the Plan and related plan exhibits filed at Docket No. 247-1 and attest to the accuracy of the factual information contained therein.

3.     Except as indicated otherwise, all facts set forth herein are based on my personal knowledge, discussions with current and former members of the Debtor's senior

---

[1] The Debtor in Possession, Everest Real Estate Investments, LLP, has used the following Assumed Names, shown on the Petition of Bankruptcy (ECF 1): ICON Hospital, ICON Skilled Nursing & Rehabilitation Facility, SE Texas ER and Hospital, SE Texas ER Hospital, Providence Hospital Northeast, SE Texas ER & Hospital.

**EXHIBIT**

**9**

management and professional advisors, my review of relevant documents, or my opinion based upon experience, knowledge, and information concerning the Debtor's operations and financial affairs. If called upon to testify, I would testify competently to the facts set forth in this Declaration. I am authorized to submit this Declaration on the Debtor's behalf.

4. I am an emergency medicine physician from Houston, Texas and have been practicing for over 20 years. I received my Bachelor of Science in Life Sciences from Kent State in 1992, my Doctor of Medicine Degree from Northeast Ohio Medical University in 1996, I performed my Residency in Emergency Medicine at William Beaumont Hospital in 1999 and received an MBA from Rice University in 2004.

5. I have been affiliated with the Debtor since May 2019 when I was asked to invest in and become operations manager of Everest. In February 2020, I subsequently became the majority owner of the Debtor through one of my business entities and remain the manager of Everest.

A. **General Background**

6. When this case was filed, Everest operated a hospital located at 19211 McKay Drive, in northeast Houston, Texas. The Debtor was formed on June 29, 2011 and conducts business under the assumed name SE Texas ER & Hospital, f/k/a ICON Hospital ("**SE Texas at McKay**"). It provides all services expected of a hospital except surgery requiring anesthesia. It also provides rehabilitation services. It has 44 hospital patient beds and an 8-person emergency room capacity. The Debtor is authorized to accept Medicare, Medicaid, and other governmental payment plans as well as private insurance.

7. When I became manager of Everest, I discovered that several critical vendor relationships had been severed by the vendors due to nonpayment. Some vendors had filed

2

lawsuits against Everest. That litigation was consuming both the time and effort of Everest personnel, which could be better directed toward the operations of Everest. Some of the vendor claims could not be verified by Everest because they were incurred prior to my involvement in Everest and the books and records of Everest were not maintained in good order.

8. The financial difficulties that Everest incurred were caused by poor management and fiscal irresponsibility of prior owners.

9. At the time I assumed control of the Debtor and its operations, it had a poor reputation in the community for services it provided. In spite of this bad reputation, I still believed that the Debtor could be rehabilitated and saved.

10. Since becoming the majority owner of Everest, I have infused more than $2,000,000 of personal funds into the hospital to rehabilitate it, pay ongoing monthly costs and expenses and address voluminous debts, which were unknown to me and not disclosed to me at the time of my investment and that existed prior to my involvement.

11. After struggling to right the financial burden of the Debtor that were caused by prior management, it was decided that a chapter 11 bankruptcy filing was the best approach to minimize the burdens of the financial problems that existed. Thus, I authorized the filing of this Chapter 11 case on August 14, 2020.

12. Since entering bankruptcy, the Debtor has been able to focus on improving operational efficiencies and increasing its patient count and will continue to do so in order to become a profitable entity serving the needs of its patients.

13. The Debtor intends to operate as it has since I became manager.

**B.    Nutex**

14.    The Debtor is affiliated with Nutex Health, LLC ("**Nutex Health**"). Nutex Health was formed by me in 2011 by and I am its chief executive officer . Nutex Health is a premier service provider of back-office management services (marketing, human resources, legal, and accounting), in the healthcare industry and provides the same to Everest. Further, Nutex Health is instrumental in the launching of Specialty Hospitals and Hospital Outpatient Departments (HOPDs) across the United States. The mission of Everest and Nutex Health has always been to excel in patient care experience and offer efficient, convenient medical attention. The Debtor's locations at Spring Valley and Clear Lake are HOPDs.

15.    Since opening in 2011, Nutex Health has:

> -Opened over 30 Specialty Hospitals, HOPDs and FSEDs (free standing emergency departments) in nine states.
> -Partnered with over 250 physicians.
> -Managed over 1000 employees nationwide.
> -Started an internal billing company that specializes in ER and inpatient billing, both in-network and out of network.
> -Created an internal hospital management division and internal business development division.
> -Manages the back-office support for over 25 hospital and medical real estate holdings.
> -In conjunction with the companies Dr. Vo has been recognized as EY Entrepreneur of the Year National Finalist.
> -Received outstanding feedback from the community reflected in five-star Google reviews.
> -Multiple hospitals have been voted and awarded "Best Hospitals" in their respective communities.

16.    Since the bankruptcy filing, the equity interests in the Debtor have been rolled up into Nutex Health, Inc. ("**Nutex**"), a successor by reverse merger to Nutex Health Holdco, LLC. I am the chief executive officer and chairman of the board of Nutex. Nutex currently owns all the member interests in the Debtor. Operations During Bankruptcy

4

17. During the pendency of this case, the Debtor has continued to operate its businesses, while implementing operational improvements, and complied with requirements as a Debtor in possession.

18. Additionally, during the case, the Court approved the Debtor opening a second location at 9180 Katy Freeway, Houston, Texas 77055 ("**SE Texas at Spring Valley**") *See Doc. No. 90*. A third location was subsequently opened at 1351 Clear Lake City Blvd., Houston, Texas 77062 ("**SE Texas at Clear Lake**"). (See Doc No. 169) These locations are designated as hospital outpatient departments ("HOPD"s) offer only emergency room service. Like the SE Texas at McKay location, they also accept payments from Medicare, Medicaid, other governmental payment plans as well as private insurance. The Debtor believes that each has a significant advantage over its nearby competitors because it believes these locations are the only free-standing independent emergency rooms that accept Medicare, Medicaid, other governmental payment plans as well as private insurance.

19. During the pendency of the case, the Court also authorized me to extend post-petition unsecured credit to help finance the Debtor's operations, with the loan to be repaid as an administrative claim of the estate. Prior to the bankruptcy. I personally contributed over $2,000,000.00 to the Debtor during this case to ensure that it could maintain the quality standard of care that has been provided since I took over management. Since the bankruptcy filing, I have contributed over $1 million to the Debtor for operational expenses.

20. The Court has appointed Thomas Mackey as a patient care ombudsman to ensure that the hospital and each HOPD maintains a high quality of care. Mr. Mackey conducts periodic site visits and then files a written report with the Court detailing the inspections. The reports have consistently reflected that there are no significant issues with

5

the hospital's operations, which necessarily includes each HOPD, and there is no compromise in the quality and safety of patient care. The most recent report filed by the ombudsman is found at Doc. No. 254.

## C. Financial Information

21. As of the filing date, Everest had assets of approximately $3.3 million, including cash of $195,913.58, net accounts receivable estimated at $926,390.35, inventory and supplies of $499,731.54, FFE of $519,929.75, leasehold improvements, other equipment and assets valued at $1,167,951.96. Further, as of the filing date, the company had liabilities of $8.8 million including secured tax debt of approximately $93,593.00, priority claims of $22,143.86 and general unsecured claims of $8,614,977.99. More than 2/3s of the general unsecured claims have been designated as contingent, unliquidated and disputed.

22. The company does not have any debt secured by liens on cash or accounts receivable.

23. For the calendar year 2019, its federal income tax return reflects gross receipts of $12,415,484, total income of $4,450,548 and a loss of $3,437,149.

24. For the twelve (12) month period prior to the bankruptcy filing, Everest and records reflect average gross monthly income of $437,735.00 and average operating expenses of $620,682.00.

25. Since the bankruptcy filing, the Debtor has opened two additional locations, the aforementioned HOPDs, and more than doubled its gross monthly income. While the Debtor is not yet profitable, it projects positive net income beginning in calendar year 2024.

**D.    Plan Confirmation**

26.    I am familiar with the Plan and I participated in the preparation of these documents and consulted with others regarding the same.

27.    The Plan divides creditors and interest holders into nine classes, eight classes of claims & one class of interest holders. The Plan provides for reorganization of Debtor and payment of allowed claims over time. To the extent that the Debtor is unable to fund the Plan, I will remit the payments required therein, including payment of all allowed administrative claims and up to $1,467,500.00 to be utilized to pay allowed Class 6 claims.

28.    As the Tabulation of Voting which was filed at Docket No. 256 reflects, all classes that voted have accepted the Plan.

29.    Class 1 are Administrative Claims. Class 1A consists of Post-Petition taxes which shall be paid no later than fifteen (15) days after the Effective Date. Class 1B consists of the Court approved fees for the Thomas Mackey, the Court appointed patient care ombudsman. These claims shall be paid in cash and in full in such amounts as may be allowed and approved by the Court on the later of the Effective Date or after such Claims are finally allowed, or such claims may be paid in accordance with any agreement or waiver between the holder of such claim and the Reorganized Debtor. Class 1C consists of claims of Court Approved Professional employed by the Debtor. These claims shall be paid in cash and in full in such amounts as may be allowed and approved by the Court on the later of the Effective Date or after such Claims are finally allowed, or such claims may be paid in accordance with any agreement or waiver between the holder of such claim and the Reorganized Debtor. Total Class 1Administrative claims are estimated at $70,500.00. Class 1 is not impaired and did not vote.

30. Class 2 are Secured Claims. Class 2A are the allowed Secured Claims of Harris County in the amount of $12,155.05 which shall be paid in no more than twelve equal installments at 12% annual interest until paid. Class 2B consists of the Secured Claim of Humble ISD. Subsequent to the filing of the Plan, Humble ISD withdrew its claim. Class 2C consists of the Secured Claim of Texas Health and Human Services Commission in the amount of $1,257.99 which, if not paid through recoupment, shall be paid within thirty (30) days of the Effective Date. Class 2 is not impaired and did not vote.

31. Class 3 are Priority Claims. These claims consisted of priority claims held by employees and physicians, all of whom have been paid in full pursuant to Court orders. No further payments are owed to this class. Class 3 claims are not impaired did not vote.

32. Class 4 are Unsecured Claims Paid Post-Petition. Class 4 claims a consists of the pre-petition Claims the Debtor inadvertently paid post-petition due to a delay in stopping its banks from honoring checks written pre-petition presented post-petition. No payments will be made to this class and Debtor will evaluate these payments and take appropriate action, where appropriate, to recover these payments, if any. Class 4 claims are not impaired and did not vote.

33. Class 5 are Unpaid Post-Petition Claims. Class 5 consists of obligations owed to critical vendors or new vendors and suppliers who provided goods and services post-petition. These claims are being paid according to agreed terms. Each Class 5 claim will be paid according to the terms entered into with the holder of such claim. The aggregate remaining balance owed to Class 5 claims is estimated at $613,178.46. Class 5 claims are impaired and voted to accept the Plan.

34. Class 6 are non-insider Unsecured Claims. Class 6 consists of allowed Unsecured Claims. The aggregate amount of allowed Class 6 claims is estimated at $2,811,116.12 and will be paid pro rata in quarterly payments over a twenty-four (24) month period. The Reorganized Debtor will remit an aggregate of $1,467,500.00 in ten quarterly payments to pay Class 6 claims, which provides an estimated 50% return on these claims. There will be nine payments of $150,000.00 and a final tenth payment of $117,427.33. To the extent the Reorganized Debtor is not able to make any of these ten (10) payments, I, or an entity related to me, will ensure that the payment will be made. The first quarterly payment will be due on the 15th day of the month following the month of the Effective Date. Class 6 claims are impaired and voted to accept the Plan.

35. Class 7 is the Administrative Claim of Dr. Thomas Vo. It consists of the Administrative Claim owed to me in the amount of $1,000,000$2 million pursuant to Everest's Expedited Motion to Incur Unsecured Post-Petition Financing Doc. No. 9) approved at Doc. No. 28 and at the September 8, 2021 final hearing held on said Emergency Motion. This claim is entitled to administrative status; however, I agree that this Class 7 claim shall receive no distribution under this Plan until Allowed Class 1-6 claims are paid in accordance with the terms of the Plan. The Class 7 claim is impaired and voted to accept the Plan.

36. Class 8 consists of Insider Unsecured Claims. Class 8 consists of claims held by insiders of the Debtor. These claims will be treated as not allowed and shall receive no distribution under the Plan. Class 8 claims are impaired and voted to accept the Plan.

37. Class 9 are Equity Interests. Class 9 consists of the Equity Holders in the Debtor. Class 9 Interest Holders will receive no distribution until Class 1-8 claims are paid under the terms of the Plan. Class 9 interests are impaired and voted to accept the Plan.

38.     The Plan provides for the immediate assumption of the following three executory contracts: Nutex Health, LLC, Tyvan LLC and Health Care Service Center Corporation (Blue Cross Blue Shield). No cure payment will be with respect these contracts, except that Tyvan, an insider of the Debtor, is owed $1,774,994.4. The cure payment will not be paid to Tyvan until after distribution to allowed Class 1-8 claims are paid in accordance with the terms of the Plan. Within 30 days after the plan is confirmed, the Debtor will file a notice of any additional contracts to be rejected or assumed, including required cure amounts for assumption.

39.     Chris Quinn shall serve as the Plan disbursing agent and will charge a flat fee of no more than $1,000 per quarter. There will also be a one-time set-up fee of $500.

40.     Based in my understanding as a non-lawyer, the Plan filed with the Court complies with the provisions of the Bankruptcy Code.

41.     The Debtor has complied with the Bankruptcy Code in proposing the Plan.

42.     The plan has been proposed in good faith and not by any means forbidden by law.

43.     The Plan provides that all payments to be made for costs and expenses incurred in connection with the Plan or incident to this case are subject to court approval as reasonable.

44.     The Plan provides that all administrative claims will be paid in full. To the extent that the Debtor does not have sufficient cash to pay these claims, I will remit payment of allowed administrative claims.

45.     For the claims and expenses due within the next 60 days, the Debtor will utilize existing cash and cash from operations to fund these payments. To the extent that the Debtor

does not have sufficient cash to pay these claims, I will remit payment of these claims and expense.

46.     The Plan is fair and equitable with respect to each class of claims or interests.

47.     Article III of the Plan provides for the same treatment by the Debtor for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest.

48.     Article VII of the Plan provides adequate and proper means for its implementation.

49.     There is no need for a governmental authority to approve rates post-confirmation.

50.     If the case were converted to a Chapter 7, unsecured creditors are not anticipated to receive any return as reflected in Exhibit "B" to the Plan.

51.     All impaired classes that voted have voted to accept the Plan.

52.     The Plan identifies that I will continue to manage the Debtor post confirmation and be the officer of the Debtor. I do not receive a salary from the Debtor for these services.

53.     The Plan establishes that the payments to be made are feasible and that to the extent that the Debtor is unable to make the required Plan payments, I will remit the requisite payment.

54.     The plan provides that all priority claims have been paid.

55.     Fees owed to Subchapter V Trustee shall be paid on the later of the Effective Date or when allowed.

56.     Debtor has a 401K plan which will be continued but no retiree benefit plan..

57.     There are no domestic support obligations in these cases.

58.     Confirmation is not likely to be followed by the need for further financial reorganization.

59.     Once the plan is confirmed, the Debtor shall begin making Plan payments and Attorneys and other professionals must file their application for payment of professional fees. Debtor contemplates that some claim objections or avoidance actions may be necessary once an in depth review has been conducted. Once these items are adjudicated, the Debtor shall then file a post confirmation certificate and close this case.

60.     One objection to the Plan was filed by Harris County at Doc. No. 253 related to lien retention language for outstanding property taxes. This objection has been resolved in with clarifying language included in the proposed order confirming the Plan.

61.     The Plan is in the best interests of the Debtor's estate and its creditors.

62.     I request on behalf of the Debtor that the Court confirm the Plan for the reasons stated above."

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on May 19, 2022.

/s/ _____
Dr. Thomas Vo, MD
Manager